ALICE J. CASSELL

*v.*

THE FIRST NATIONAL BANK OF VINCENNES.

*Opinion filed November 8, 1897—Rehearing denied December 7, 1897.*

1. TRIAL—*right to open and close.* Where one interpleading in attachment claims the property by deed, and the attachment plaintiff admits the execution of the deed but alleges that it was made to defraud creditors and accepted by the interpleader with knowledge, concluding with a verification, to which the interpleader replies denying the allegations and concluding to the country, the attachment plaintiff has the affirmative and may open and close.

2. EVIDENCE—*when introduction of deed in evidence is not an admission of its validity.* An attachment plaintiff introducing in evidence in interpleader proceedings a deed from the attachment defendant to the intervenor purporting to be for a certain consideration, does not thereby admit the validity of the deed, but may show by extrinsic evidence that there was in fact no consideration.

3. SAME—*when a party is not concluded by testimony of his witness concerning admissions.* The testimony of a witness called by an attachment plaintiff in interpleader proceedings, that the party interpleading had told him she paid for the attached property the consideration specified in her deed thereto from the attachment

defendant, is not conclusive upon the attachment plaintiff as to the validity of the deed, but may be considered by the jury.

4. FRAUD—*when deed from husband to wife cannot be sustained as against creditors.* A deed from husband to wife, made when he was deeply in debt, was being sued and unable to meet or secure his obligations or pay judgments against him, cannot be sustained, in the absence of evidence tending to prove that the wife was a *bona fide* creditor of her husband when the deed was made.

5. APPEALS AND ERRORS—*when a party cannot complain of court's failure to exclude evidence from jury.* One who neglects to move to exclude from the jury certain transcripts of judgments apparently unpaid, upon proving, by evidence subsequently introduced, that the judgments were in fact paid, cannot complain, on appeal, that the trial court permitted them to go to the jury.

6. SAME—*harmless error will not reverse.* Harmless error in the admission or exclusion of evidence is not ground for reversal.

APPEAL from the Circuit Court of Lawrence county; the Hon. S. Z. LANDES, Judge, presiding.

W. F. FOSTER, and CULLOP & KESSINGER, for appellant:

An interpleader in attachment must prove affirmatively that he is the *bona fide* owner of the property in question, and he has the legal right to open and close the case. 17 Am. & Eng. Ency. of Law, 197; 1 Thompson on Trials, secs. 226-229, 244, 245; *Churchill* v. *Lee,* 77 N. C. 341.

A debtor in failing circumstances may prefer one creditor to the exclusion of others, when he does so in good faith, for a valuable consideration; and the wife may be preferred by the husband if she is a *bona fide* creditor, and the conveyance is made in good faith and based upon a valuable consideration. *Tomlinson* v. *Mathews,* 98 Ill. 178; *Frank* v. *King,* 121 id. 250.

The right to dispose of one's property for an honest purpose is not terminated by indebtedness or insolvency, although such disposition may or does have the effect of hindering or delaying creditors. *Daugherty* v. *Cooper,* 77 Mo. 528; 8 Am. & Eng. Ency. of Law, 756.

One in good faith and for a valuable consideration may purchase property although the grantor was in debt

and intended by such sale and conveyance to hinder, delay and defraud his creditors, and the purchaser will be protected.    *Horlin* v. *Sook,* 30 Kan. 401; 46 Am. Rep. 100.

A *bona fide* purchaser for value, without notice from a fraudulent grantee, gets a good title as against a creditor of the fraudulent grantor.    *Neal* v. *Gregory,* 19 Fla. 356; *Schebel* v. *Jordon,* 30 Kan. 353; *Zoeller* v. *Riley,* 100 N. Y. 102; 53 Am. Rep. 157.

GEE & BARNES, and REILY & EMISON, for appellee:

A deed made in fraud of creditors is absolutely void. *Gould* v. *Steinburg,* 84 Ill. 170.

When the object of a grantor in making a conveyance is to hinder and delay his creditors, such instrument is not purged of the fraud because it may have some other purpose.    *Reed* v. *Noxon,* 48 Ill. 323; *Phelps* v. *Curts,* 80 id. 109; *Jones* v. *King,* 86 id. 225; *Moritz* v. *Hoffman,* 35 id. 553; *Emerson* v. *Bemis,* 69 id. 537.

Before a wife can have any advantage over creditors she must offer clear and convincing proof that the transaction is free from taint.    *Frank* v. *King,* 121 Ill. 250; *Maddox* v. *Epler,* 48 Ill. App. 265; *Austin* v. *Bank,* 47 id. 225.

Clear and convincing proof is required of a transfer among relatives.    *Martin* v. *Duncan,* 41 N. E. Rep. 43.

Mr. JUSTICE CRAIG delivered the opinion of the court:

On the 20th day of October, 1894, the First National Bank of Vincennes, Indiana, brought an action in attachment against Jacob W. Cassell for the sum of $7636 due upon certain promissory notes, and the writ was levied on certain lands in Lawrence county.    Alice J. Cassell, the appellant, the wife of the defendant in the attachment proceedings, appeared and filed an interpleader, in which she set up that neither at the time of issuing nor at the time of levying the writ of attachment was the said real estate, or any part thereof, the property of Jacob W. Cassell, but, on the contrary, said land was the property of

said Alice J. Cassell.   To the interpleader the bank re-
plied that Alice J. Cassell did not own, nor has she at any
time owned, the real estate described in the interpleader;
that the only right or title held by her was through a
deed of conveyance made to her by her husband, and that
the said deed was made by him to her for the purpose of
cheating, defrauding, hindering and delaying his credit-
ors, and that she accepted the deed with the knowledge
that the same was made for that purpose, concluding
with a verification.   To the plea of the bank Alice J. Cas-
sell replied that the execution of the deed was not made
for the purpose of cheating and defrauding the creditors
of Jacob W. Cassell, and was not so accepted in manner
and form as set out by the bank, concluding to the coun-
try.   Upon the issues made by the pleadings a trial was
had before a jury, resulting in a verdict that the title to
the real estate in question was in Jacob W. Cassell and
subject to the writ of attachment.   The court entered
judgment on the verdict, and the interpleader, Alice J.
Cassell, appealed.

On the trial the court ruled that the bank, plaintiff in
attachment, was entitled to open and close the case, and
this decision of the court is relied upon as error.   As to
the controversy between Alice J. Cassell and the First
National Bank, Alice J. Cassell was the plaintiff and the
bank was the defendant.   It does not, however, always
follow that the plaintiff in an action is entitled to open
and close.   That depends on the pleadings.   Under the
pleadings, whoever has the affirmative is entitled to open
and close.   Here, in the interpleader Alice J. Cassell set
up that she was the owner of the premises attached, and
if the bank in its plea had merely denied that fact and
concluded to the country, the affirmative would have been
cast on her, and she would have been entitled to open
and close.   But the bank in its plea admitted that she
had a deed of the premises, but averred that the deed was
made by Jacob W. Cassell for the purpose of cheating,

defrauding, hindering and delaying creditors, and that she accepted the deed with full knowledge of the purpose for which it was executed. This plea concluded with a verification, and to the plea thus interposed by the bank the interpleader, in her replication, replied denying the facts set up therein, and concluded to the country. On the issue thus made by the pleadings it is apparent that the burden of proof to impeach the conveyance was cast upon the bank, and the bank, having the affirmative, was entitled to open and close.

On the trial the bank read in evidence the deed from Jacob W. Cassell to Alice J. Cassell for the lands in question, the consideration named in the deed being $15,000. The bank also called as a witness John E. McGaughey, who testified that he had a conversation with Alice J. Cassell, in which she said she paid $15,000 for the lands, which she took from her father and mother's estate. It is said in the argument, this evidence having been introduced by the bank, the bank is bound by it, and that it is conclusive on the question of the validity of the deed from Cassell to his wife. The facts that a deed had been executed by Cassell to his wife, and that the consideration named in the deed was $15,000, were not controverted by any one. When, therefore, the deed was put in evidence, it proved that a conveyance had been made which purported to be for a consideration of $15,000, but whether $15,000 was the real consideration for the conveyance was a question to be determined from evidence outside of the deed, and resort might properly be had to evidence to prove that in fact nothing was paid by the grantee for the conveyance. Under such circumstances, the fact the bank read the deed in evidence could have no controlling bearing upon the issue involved between the parties.

In regard to the statement made by Mrs. Cassell to the witness McGaughey, called out by the bank, it was evidence proper for the consideration of the jury, in connection with all the other evidence in the case, but what

weight should be given to the evidence was a matter solely for the jury. The issue presented by the pleadings was whether the deed from Cassell to his wife was made for the purpose of cheating and defrauding or for the purpose of hindering and delaying the creditors of the grantor. Much evidence was introduced bearing on this question. The proof showed, beyond controversy, that at the time the deed was executed the grantor, Jacob W. Cassell, was largely indebted to various persons, including a debt of over $7000 due the bank; that he was being sued, and was unable to meet his obligations. He had some property in Indiana, where he resided, but it was mostly encumbered. A number of judgments had been rendered against him which he was unable to pay. He was pressed by his creditors for payment, but was unable to pay or secure his obligations. These are the circumstances under which he conveyed the property described in the deed to his wife. If Jacob W. Cassell was honestly and *bona fide* indebted to his wife in the sum of $15,000, and in good faith sold and conveyed the lands described in the deed to her in payment or satisfaction of the indebtedness, the transaction might be sustained. If the wife of Cassell was a *bona fide* creditor she had the same right to collect her debt that any other creditor had. If he owed her $15,000 she stood upon an equality with all other creditors, and, occupying that position, she had the right to purchase property in payment of any debt he honestly and justly owed. But the difficulty with appellant's case is, there is no evidence in the record, aside from her declaration to the witness McGaughey, that Jacob W. Cassell was indebted to her in any amount whatever. The appellant and her husband were both witnesses in the case and both testified, but neither disclosed the existence of any indebtedness when the deed was made. If Cassell was indebted to her, why did they fail to disclose the amount due and the nature and character of the indebtedness? Had they done this the result

might have been different. In the absence of any showing on behalf of appellant that she was a *bona fide* creditor, and as such purchased the lands described in the deed, the jury, under the evidence introduced by the bank, could not, without disregarding the evidence, do otherwise than return a verdict in favor of the attaching creditor.

It is claimed that the court erred in admitting in evidence a transcript of a judgment in favor of J. B. Kelso against Jacob W. Cassell for $1000, for the reason the transcript showed on its face that a new trial had been granted and the judgment vacated. We do not think the transcript was admissible in evidence, but as one part of the transcript showed that a judgment had been rendered and another part showed that the judgment had been vacated, the transcript, when considered as a whole, proved nothing, and the error of the court was harmless.

It is also claimed that the court erred in the admission as evidence of certain other transcripts of judgments rendered against Cassell, because the judgments had been paid. At the time the transcripts were offered in evidence it did not appear that they had been paid, and the court could not do otherwise than admit them in evidence. The court, however, at the same time ruled that if it turned out in the end that they, or any of them, had been paid they should be excluded from the consideration of the jury. When, therefore, it was developed during the progress of the trial that a part of the judgments had been paid, appellant was entitled to have them excluded from the jury, and had she asked the court to exclude the judgments which had been paid from the jury, the court, no doubt, would have granted the request. But she made no application of that character, and having failed to do so she is in no position to complain.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*